COVINGTON STREET R. CO. *v.* AMOS SHINKLE, TRUSTEE, ET AL.

**Validity of Corporation Bonds.**

When bonds of a street railroad company are issued by the consent of all of its directors and stockholders, in pursuance of a contract of sale of the stock of the road, the sellers receiving some of the bonds as a consideration for the transfer of their stock, the fact that such sellers soon after the issue of the bonds resigned as directors in the interest of those becoming the purchasers, and who constructed the road and assumed all the liabilities growing out of it, ought not to be considered as evidence of fraud on the part of either.

APPEAL FROM KENTON CHANCERY COURT.

February 17, 1881.

OPINION BY JUDGE PRYOR:

The right of the president and directors to issue bonds for and in behalf of the corporation styled the "Covington Street Railway Company" has not been questioned, and the grounds upon which a reversal is sought are: First, that the bonds were obtained from the corporation by fraud. Second, that the appellee, West, the holder of the bonds, took them with notice of the fraud and want of consideration.

The capital stock of the corporation was $250,000, and as soon as a subscription of stock to the amount of $25,000 had been made, directors could be elected under the provisions of the charter, and the corporation was authorized to issue bonds not exceeding the

amount of its capital stock, bearing interest at no greater rate than 10 per cent. and in denominations not less than $1,000, and to secure the payment a mortgage might be made on the property and income of the company.

Bullock, Sherlock, Lewis, Cook and McDowell each subscribed $5,000 in stock, making the sum necessary to organize the corporation, and when organized, with McDowell as president and the others directors, they entered into a contract with the city of Covington for the use of its streets for the purpose of constructing the railway, and agreed with the city to complete two and one-half miles of its road within a definite period, and for the performance of their contract executed, or had executed, to the city a bond in the penal sum of fifty thousand dollars.

The president and directors of this corporation being the only stockholders, and, as the proof shows, hesitating in regard to the undertaking, made as parties of the first part an agreement with McDowell, who was the president, and one Thomas C. Robbins, of the second part, the two latter contracting not only for themselves but for other parties, by which agreement the latter were to perform all the obligations that the then president and directors were under to the city, and to assume their subscriptions to the capital stock, by having it credited on the cost of construction and equipping the road. When released from all liability the said Bullock, Sherlock, Lewis, Cook, etc., were to transfer to McDowell and Robbins all their right and interest in the capital stock of the corporation, and would take in the meantime no other subscriptions of stock. In consideration therefor the parties of the second part were to issue and secure by mortgages on the rights and franchises of the corporation a certain number of bonds of the denomination of $1,000, and transfer to each of the parties of the first part $5,000 of said bonds, bearing 7 per cent. interest and payable semi-annually in the city of New York, the bonds to become due in twenty years. Under this arrangement, the parties of the second part, McDowell and Robbins and their associates, performed their part of the contract, and the parties of the first part resigned their position as directors, except McDowell, and the parties of the second part became directors and stockholders in their stead.

In the first place all the officers of the road, the president and directors, they being the only stockholders, contracted with third parties to perform their undertaking, and in consideration there-

for transferred to them all their capital stock and all interests they had in the corporation. The parties to whom this transfer was made, on the resignation of the parties of the first part, were elected as a board of directors; and they owned all the stock of the corporation, and so far as the record shows are today, or their assignors are, the owners of the stock entirely. If, as has been assumed in argument, this contract between these stockholders was fraudulent, who is to be benefitted by a judgment declaring the bonds a nullity or denying to the appellees' the right to recover on their coupons that have long since fallen due?

McDowell, T. C. Robbins, A. T. C. Robbins, Bushnell and Russell, with whom, or for whose benefit this contract was made, after they had completed this line of railway, were the sole owners of all the stock, and being such owners and the only parties having any pecuniary interest at that time in the franchise or the income from it, executed these bonds and delivered them to the original stockholders. So all the parties in interest were parties to the contract, and a judgment canceling their bonds would necessarily enure to the parties or their assigns who entered into this alleged fraudulent agreement. The bonds were issued by the consent of all the parties in interest, and when the twenty bonds were delivered to Bullock and others, the parties delivering them were not only the directors, but owned every dollar of the stock. If fraud exists it affects only those who were alone interested in the subject-matter of the agreement; but as we construe the agreement in this case it was in effect a sale to McDowell and others of all the right and interests of Bullock and others, including their capital stock in the corporation, and the fact that they resigned as directors in the interest of those who had constructed the work, and assumed all the liabilities growing out of it, ought not be considered as evidence of fraud on the part of either.

This written agreement and the mortgage given to secure the bonds were both matters of record, the one made a part of the proceedings of the board and the other of record in the Kenton county clerk's office. No stock seems to have been issued prior to the recording of this mortgage, and therefore no innocent party appears in this record to have been affected by the contracts made.

While the answer filed in this case presents an issue affecting the validity of all the bonds, as well as the coupons transferred or sold to the appellees, still the recovery was only sought in the

original action on the coupons that were then due. The amendments presented distinct causes of action, although growing out of the same contract, and while the appellant may have made no objection, still it should have been served with process. But if this is an independent cause of action, has this court the right to reverse the judgment until after a motion has been made in the court below? The motion being void on each amendment, a motion to set the same aside should have been made so as to give this court revisory power over it.

Judgment *affirmed*.

*J. G. Carlisle, for appellant.*

*W. H. Mackay, for appellees.*